## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ELECTRONIC PRIVACY INFORMATION
CENTER,
1718 Connecticut Avenue, N.W., Suite 200
Washington, D.C. 20009

     *Plaintiff,*

v.

U.S.  DEPARTMENT OF JUSTICE
NATIONAL SECURITY DIVISION
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20230

     *Defendant*.

Civil Action No. _____17-2274_____

## COMPLAINT FOR INJUNCTIVE RELIEF

1.      This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(a)

(2017), for injunctive and other appropriate relief, seeking the release of agency records

requested by Plaintiff Electronic Privacy Information Center ("EPIC") from Defendant United

States Department of Justice ("DOJ") National Security Division ("NSD").

2.      EPIC challenges the failure of the NSD to disclose non-exempt records, in the agency's

possession, for reports regarding the Federal Bureau of Investigation ("FBI") queries of data

concerning U.S. persons for routine criminal investigations, under Section 702 of the Foreign

Intelligence Surveillance Act. ("EPIC's FOIA Request").

### Jurisdiction and Venue

3.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331

and 5 U.S.C. §§ 552(a)(4)(B) and (a)(6)(c)(i). This Court has personal jurisdiction over

Defendant DOJ.

4.      Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B).

## Parties

5.      Plaintiff EPIC is a nonprofit organization incorporated in Washington, D.C. and established in 1994 to focus public attention on emerging privacy and civil liberties issues. Central to EPIC's mission is oversight and analysis of government surveillance activities. EPIC's Advisory Board includes distinguished experts in law, technology, public policy, and cybersecurity. EPIC routinely disseminates information to the public through the EPIC website, the EPIC Alert, and various other news organizations. EPIC is a representative of the news media. *EPIC v. DOD,* 241 F. Supp. 2d 5, 15 (D.D.C. 2003).

6.      Defendant DOJ is a federal agency within the meaning of the FOIA, 5 U.S.C. § 552(f)(1). Defendant DOJ is headquartered in Washington, D.C.

## Facts

### FBI Searches Data Collected for Foreign Intelligence Purposes under FISA for Domestic Criminal Investigations

7.      Warrantless searches of U.S. persons' communications acquired under Section 702 of the FISA Amendments Act, 50 U.S.C. §§ 1881a, *et seq* (often referred to as "backdoor searches") are among the most controversial investigative techniques pursued under the Foreign Intelligence Surveillance Act ("FISA"). Section 702 was enacted to authorize certain electronic surveillance of foreign communications without probable cause. Section 702 requires that the target of an investigation is a non-U.S. person located outside the U.S. §1881a(a-b). However, the FBI's searches these communications, obtained under Section 702, for private information about Americans. So far, there has been no opportunity for a defendant or other individual to challenge

this practice in court and questions remain about the Constitutionality of these warrantless searches,[1]

8.      Congress is now considering proposals to limit the practice. USA Liberty Act of 2017, H.R. 3989, 115th Cong. §101 (2017); USA Rights Act of 2017, S. 1997, 115th Cong. §2 (2017).

9.      To inform this public debate, EPIC seeks a government report, mandated by the Foreign Intelligence Surveillance Court ("FISC"), concerning FBI use of 702 authority for criminal investigatory purposes concerning a U.S. person. *Memorandum Opinion and Order,* [docket no. redacted], slip op. at 78 (FISC Nov. 6, 2015).[2]

10.     The report required by the FISC, sought by EPIC, arose because of concerns about the possible misuse of Section 702 authority by the FBI. The FISC required production of a report "concerning each instance after December 4, 2015, in which FBI personnel receive and review Section 702-acquired information that the FBI identifies as concerning a United States person in response to a query that is not designed to find and extract foreign intelligence information." *Id.*

11.     The FISC report further required a "detailed description of the information at issue and the manner in which it will be used for analytical, investigative, or evidentiary purposes. It shall also identify the query terms used to elicit the information and provide the FBI's basis for concluding that the query is consistent with the applicable minimization procedures." *Id.*

**Section 702 of the FISA Amendments Act**

12.     The Foreign Intelligence Surveillance Act of 1978 ("FISA") was enacted to authorize and regulate surveillance of electronic communications for foreign intelligence purposes. 50 U.S.C. § 1801 *et seq.* In 2008, Congress amended the FISA to authorize electronic surveillance of certain

---

[1] The Foreign Intelligence Surveillance Court has, as explained below, authorized certain limited backdoor searches in an *ex parte* proceeding.

[2] https://www.dni.gov/files/documents/20151106-702Mem_Opinion_Order_for_Public_Release.pdf.

foreign communications of non-U.S. persons located abroad, with the assistance of communications service providers in the United States. 50 U.S.C. § 1881a. This provision is commonly referred to as "Section 702."

13.     The rules for carrying out Section 702 surveillance depart significantly from the rules concerning domestic electronic surveillance. Surveillance orders under Section 702 are not subject to any prior or individualized approval by a court. Instead, the FISC conducts an annual "programmatic" review of the procedures for compliance with the statutory requirements. § 1881a(a). The FISC reviews the "targeting" procedures (procedures "reasonably designed" to ensure collection is "limited to targeting persons reasonably believed to be outside" of the U.S. and prevent "intentional" collection of entirely domestic communications) the "minimization" procedures (procedures "reasonably designed" to minimize the acquisition and retention, and prohibit the dissemination of U.S. persons information), and certifications of the Attorney General and the Director of National Intelligence that these procedures meet the statutory requirements. §§ 1881a(d-e, g). Unlike other provisions of the FISA, the government is not required to demonstrate "probable cause," establish that a target is an agent of a foreign power or engaged in criminal activity, or identify the specific places or facilities that will be monitored. Section 702 prohibits the targeting of United States persons and persons inside the United States for surveillance. 50 U.S.C. §§ 1881a(b)(1-5) (stating that "acquisition…may not intentionally target any person known to be located in the United States… may not intentionally target a United States person… outside the United States," and more)

14.     The Government has conceded that a significant amount of U.S. persons' communications are collected under Section 702 surveillance programs. While the Intelligence Community will not release statistics on the number of Americans whose communications are

collected under 702 programs, the "NSA acquires more than two hundred and fifty million

Internet communications every year using Section 702, so even if U.S. communications make up

a small fraction of that total, the number of U.S. communications being collected is potentially

quite large." Press Release: Wyden Releases Details of Backdoor Searches of Americans'

Communications (June 30, 2014).[3]

### "Backdoor Searches" Raise Substantial Concerns About Compliance with Fourth Amendment Standards

15.     Under the DOJ's existing policy, federal agents can search communications collected

under Section 702 for information about Americans, even when this information *could not*

*lawfully be targeted* at the front end. Privacy and Civil Liberties Oversight Bd*., Report on the*

*Surveillance Program Operated Pursuant to Section 702 of the Foreign Intelligence Surveillance*

*Act* 59 (2014) [hereinafter PCLOB 702 Report].[4]   And can do so with few limitations:

> The government conducts these searches in broadly defined "foreign intelligence"
> investigations that may have no nexus to national security, in criminal investigations that
> bear no relation to the underlying purpose of collection, and even in the pre-assessment
> phase of investigations where there are no facts to believe someone has committed a
> criminal act.

> Letter from Coalition of 58 Organizations to Chairman Bob Goodlatte, House Judiciary
> Comm., and Ranking Member Conyers, House Judiciary Comm. (Oct. 3, 2017).[5]

16.     As then Chairman of the Privacy and Civil Liberties Oversight Board ("PCLOB"), David

Medine, explained to Congress "they're just sort of entitled to poke around . . . and see if

something is going on." *Oversight and Reauthorization of the FISA Amendments Act: Hearing*

*Before the S. Judiciary Comm.* 114th Cong. (2016) (statement of then PCLOB Chairman David

---

[3] https://www.wyden.senate.gov/news/press-releases/wyden-releases-details-of-backdoor-searches-of-americans-communications.

[4] https://www.pclob.gov/library/702-report.pdf.

[5] https://epic.org/privacy/surveillance/fisa/Section702Backdoor-CoalitionLetter.pdf.

Medine).[6] For instance, in 2016 there were over 5,000 government queries using search terms concerning *known* U.S. persons to retrieve the minimized contents of communications. Office of the Dir. Of Nat'l Intelligence, *Statistical Transparency Report Regarding the Use of National Security Authorities for Calendar Year 2016* (2017).[7] There were 30,355 queries concerning a known U.S. person of metadata obtained under 702. *Id.* Importantly, both statistics provided by the government exclude FBI queries. *Id*

17.     Further, while notice must be given to criminal defendants when information "obtained or derived" from Section 702 is used in legal proceedings, 50 U.S.C. § 1881e(a), notice has been provided in only a handful of cases after public scrutiny prompted internal review of DOJ policy. Patrick C. Toomey, *Why Aren't Criminal Defendants Getting Notice of Section 702 Surveillance — Again?*, Just Security (Dec. 11, 2015).[8] Finally, while this program has been approved by the FISC, there has been no opportunity for a defendant or other individual to challenge the constitutionality of these searches under Section 702.

18.     Simply put, government search, review, or use of Americans' information obtained under Section 702 without a warrant or individualized court determination undermines the right, guaranteed by the Fourth Amendment, to be free from unreasonable searches and seizures. "[E]ven in the absence of misuse for improper ends" this "collection and examination of U.S. persons' communications represents a privacy intrusion." PCLOB 702 Report 702, supra, at 133.

### Report to the FISC on 2016 FBI Backdoor Searches

19.     At issue in this complaint is a FISC-mandated government report about searches of Section 702 data conducted for purely domestic, criminal investigatory purposes where the FBI

---

[6] https://www.judiciary.senate.gov/meetings/oversight-and-reauthorization-of-the-fisa-amendments-act-the-balance-between-national-security-privacy-and-civil-liberties.

[7] https://icontherecord.tumblr.com/transparency/odni_transparencyreport_cy2016.

[8] https://www.justsecurity.org/28256/arent-criminal-defendants-notice-section-702-surveillance-again.

received and reviewed information about a U.S. person. The report explains the government's

justifications for the FBI's acquisition of data on a U.S. person, and how it planned to use that

information —details about the domestic criminal procedures that should be reviewed by the

public.

20.     In July 2015, the U.S. government sought reauthorization of the Section 702

certifications, including associated targeting and minimization procedures. *Memorandum*

*Opinion and Order,* slip op. at 1. The FISC determined the certifications were likely to present

one or more "novel or significant interpretation[s] of the law," possibly requiring appointment of

an *amicus curiae* under the USA Freedom Act. *Id*. at 5; 50 U.S.C. § 1803(i)(2). The FISC

delayed review and appointed Amy Jeffress as *amicus* to assist the court in evaluating the

statutory and constitutional validity of the FBI's procedures for querying Section 702 acquired

information to return information concerning United States persons. *Memorandum Opinion and*

*Order,* slip op at 5-7. Ms. Jeffress raised concerns about the procedures' compliance with the

FISA and also concluded that, without further safeguards, the procedures were inconsistent with

the Fourth Amendment. *Id*. at 30, 39-40.

21.     The FISC subsequently approved the FBI's Section 702 minimization procedures in a

November 6, 2015 Memorandum Opinion and Order. *Id*. at 36-44. The court based the decision,

in part, on a finding that the risk to U.S. persons was relatively low. Relying on information

provided by the Government, the court concluded the FBI would rarely, if ever, view or use the

results of a query of Section 702-acquired data concerning U.S. persons for investigations

unrelated to national security. However, to monitor whether the risk assessment was correct,

FISC introduced a reporting requirement:

> The government shall promptly submit in writing a report concerning each instance after
> December 4, 2015, in which FBI personnel receive and review Section 702-acquired

information that the FBI identifies as concerning a United States person in response to a query that is not designed to find and extract foreign intelligence information. The report should include a detailed description of the information at issue and the manner in which it will be used for analytical, investigative, or evidentiary purposes. It shall also identify the query terms used to elicit the information and provide the FBI's basis for concluding that the query is consistent with the applicable minimization procedures.

*Id*. at 78.

22.     In the annual "Statistical Transparency Report Regarding Use of National Authorities," the DNI releases statistics on the use of national security authorities. Office of the Dir. Of Nat'l Intelligence, *supra*. The Report on calendar year 2016 included the number of "instance[s] in which FBI personnel receive[d] and review[ed] Section 702-acquired information that the FBI identifies as concerning a United States person in response to a query that is not designed to find and extract foreign intelligence information" — one. *Id*. This statistic is also *the only information* provided in the ODNI Transparency Report about FBI queries, since all other query statistics exclude FBI from their data. *Id.*  However, the DNI did not release any further information about this query; information at issue, how it was used, and the justification for the query are unknown.

### Release of the FISC Mandated Report on FBI Backdoor Searches is of Significant, Urgent Public Interest

23.     Prompt disclosure of this NSD report is critical for the public debate about the pending reauthorization of Section 702. As renewal of Section 702 is now pending before Congress, the public has a right to know why the FBI may obtain the private communications of Americans for ordinary criminal investigations without a warrant.

24.      Congress is currently considering measures that would renew Section 702 without modification. The DOJ recently advocated for a "clean" reauthorization, and requested that Congress make the authorities permanent. Letter from Jeff Sessions, Attorney Gen., and Dan

Coats, Dir. of Nat'l Intelligence, to Paul Ryan, Speaker, U.S. House of Rep, et al. (Sept. 7, 2017).[9]

25.      The three current legislative proposals each take dramatically different approaches to addressing backdoor searches. The USA Liberty Act would impose a warrant requirement on a subset of backdoor searches. If searching for evidence of a crime, the government would be required to obtain a probable cause order before accessing or disseminating any information the search returned. H.R. 3989, 115th Cong. §101 (2017). This is the same type of backdoor search at issue in the FISC mandated report EPIC seeks in this case. The USA Rights Act would close the backdoor search loophole by requiring a probable cause order for any agency's query to find communications of or about a U.S. person or person located in the U.S, with an emergency exception. S. 1997, 115th Cong. §2 (2017). The FISA Amendments Reauthorization Act would permit warrantless backdoor searches to continue. S. 2010, 115th Cong. (2017).

26.      The report EPIC seeks contains important information about the FBI's current use of Section 702 authority. It is imperative that the American public and the members of Congress promptly receive the details of the government's use of 702 to meaningfully assess the current legislative proposals.

**EPIC's FOIA Request**

27.      On May 15, 2017, EPIC submitted a FOIA Request to the DOJ NSD.

28.      EPIC's FOIA Request sought reports, mandated by order of the FISC, concerning FBI queries of Section 702 acquired data concerning U.S. persons for non-foreign intelligence purposes. Specifically, EPIC requested:

---

[9]https://www.dni.gov/files/documents/Newsroom/Press%20Releases/DOJ2017.pdf?utm_mediu m=email&utm_source=govdelivery.

All reports submitted pursuant to the November 6, 2015 FISC Memorandum Opinion and
Order concerning FBI receipt and review of Section 702-acquired information.

29.     EPIC sought "news media" fee status under 5 U.S.C. § 552(4)(A)(ii)(II) and a waiver of

all duplication fees under 5 U.S.C. § 552(a)(4)(A)(iii).

30.     On June 8, 2017, the NSD acknowledged receipt of EPIC's FOIA request. The letter

designated EPIC's FOIA Request FOIA/PA #17-186.

31.     In a letter dated July 19, 2017, the NSD wrote to EPIC, enclosing one, near fully redacted

record. The NSD stated it had located one responsive record which it was releasing in part,

withholding portions of the record under FOIA exemptions (b)(1), (b)(3) based on 50 U.S.C.

§403-1(i)(l), (b)(6), and (b)(7)(C).

32.     On August 9, 2017, EPIC filed an administrative appeal ("EPIC's FOIA Appeal"),

challenging the NSD's assertion of exemptions (b)(1) and (b)(3) and failure to release reasonably

segregable material to the DOJ's Office of Information Policy ("OIP").

33.     In a letter dated August 17, 2017, the OIP acknowledged receipt of EPIC's FOIA Appeal

and assigned it number DOJ-AP-2017-006152. The OIP stated it received the appeal on August

15, 2017.

34.     In a letter dated October 24, 2017, the OIP denied EPIC's FOIA Appeal.

### EPIC's Exhaustion of Administrative Remedies

35.     The OIP has denied in full EPIC's FOIA Appeal of the NSD's assertion of exemptions

(b)(1) and (b)(3) and failure to release reasonably segregable material. *See* Ex. 1.

36.     EPIC has exhausted all administrative remedies under 5 U.S.C. § 552(a)(4)(B).

### Count I

### Violation of FOIA: Unlawful Withholding of Agency Records

37.     Plaintiff asserts and incorporates by reference paragraphs 1–36.

38.    Defendant has wrongfully withheld agency records requested by Plaintiff.

39.    Plaintiff has exhausted applicable administrative remedies with respect to Defendant's withholding of the requested records. 5 U.S.C. § 552(a)(4)(B).

40.    Plaintiff is entitled to injunctive relief with respect to the release and disclosure of the requested records.

### Requested Relief

WHEREFORE, Plaintiff requests that this Court:

   A.  Order Defendant to immediately conduct a reasonable search for all responsive records;

   B.  Order Defendant to disclose to Plaintiff all responsive, non-exempt records;

   C.  Order Defendant to produce the records sought without the assessment of search fees;

   D.  Order Defendant to grant EPIC's request for a fee waiver;

   E.  Award EPIC costs and reasonable attorney's fees incurred in this action; and

   F.  Grant such other relief as the Court may deem just and proper.

Respectfully Submitted,

Marc Rotenberg, D.C. Bar # 422825
EPIC President and Executive Director

/s/ Alan Butler_____

Alan Butler, D.C. Bar # 1012128
EPIC Senior Counsel

ELECTRONIC PRIVACY
INFORMATION CENTER
1718 Connecticut Avenue, N.W.
Suite 200
Washington, D.C. 20009
(202) 483-1140 (telephone)
(202) 483-1248 (facsimile)

Dated: November 1, 2017